UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES R. PATTERSON,

    Plaintiff,

v.                                           Case No. 8:08-CV-1081-T-17EAJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for supplemental security income ("SSI").

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (the "ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to

---

[1] The district court has referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588-89 (11th Cir. 1987).

## I. Background

Plaintiff filed his application for SSI on October 26, 2004, with an alleged onset of disability of July 1, 2002. (T 17) Plaintiff's claim was denied initially and upon reconsideration. (Id.) At the administrative hearing, Plaintiff amended the alleged onset date to October 26, 2004. (Id.) Following an administrative hearing, the ALJ denied Plaintiff's claim in a decision dated January 17, 2008. (T 17–26) On May 13, 2008, the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 3–5)

At the time of the July 6, 2007 hearing, Plaintiff was 49 years old.[3] (T 24, 576) The ALJ determined that Plaintiff has at least a high school education. (T 24) Plaintiff has past relevant work experience as a painter, aluminum installer, and warehouseman/deliverer. (T 73-77) The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 26, 2004 and that Plaintiff had the following severe impairments: hepatitis C, cirrhosis, multilevel degenerative disc disease,

---

[2] Decisions of the former Fifth Circuit rendered before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[3] Plaintiff was fifty years old at the time of the ALJ's decision. (T 24)

2

and depression. (T 19)

The ALJ determined Plaintiff to have the residual functional capacity to perform "a wide range of light work."[4] (T 20) The ALJ noted that Plaintiff requires a sit stand option, that Plaintiff cannot be exposed to hazards or temperature extremes, and that he is limited to "unskilled, low stress work defined as involving one to two step processes, routine and repetitive tasks, working primarily with things rather than people, and entry level" type work. (Id.) Given that residual functional capacity, the ALJ found that Plaintiff is unable to perform any past relevant work. (T 24) The ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff could perform. (Id.) Thus, the ALJ determined that Plaintiff was not disabled as defined in the Act. (T 25)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Discussion

Plaintiff alleges that the Commissioner erred in: (1) failing to make a proper credibility finding concerning Plaintiff's subjective complaints of pain; (2) discounting the opinion of the treating physician and according substantial weight to non-examining physicians; (3) substituting his own opinion for the opinions of medical experts; (4) considering Plaintiff's ability to perform

---

[4] Light work, defined at 20 C.F.R. §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds. The regulations further provide: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

daily activities in assessing Plaintiff's credibility; and (5) failing to consider the combined effects of Plaintiff's impairments. The undersigned will address the first and fourth of Plaintiff's issues together, as they both concern the ALJ's credibility determination.

**A.** Plaintiff contends that the ALJ erred in finding Plaintiff's pain testimony not wholly credible (Dkt. 17 at 4-6). Specifically, Plaintiff argues that the ALJ discredited Plaintiff's testimony without properly analyzing Plaintiff's complaints of pain and other medical evidence.

It is incumbent on the ALJ to make credibility findings as to a claimant's testimony. See generally Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). This standard is consistent with Social Security regulations which provide that a claimant
may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

In his opinion, the ALJ expressly cited to and applied the applicable pain standard. (T 21) The ALJ analyzed whether the medical evidence supported the severity of Plaintiff's allegations of pain and found that the level of pain Plaintiff claims is not consistent with the record. (T 21-24)

4

Thus, the ALJ found Plaintiff's testimony generally not credible. (T 22)

The question remaining, therefore, is whether the ALJ's assessment of Plaintiff's testimony regarding his symptoms and restrictions is based on substantial evidence. Plaintiff contends that the ALJ erroneously based his credibility determination on Plaintiff's alleged "cure" of hepatitis C, Plaintiff's use of a cane, and Plaintiff's ability to perform daily activities. There is no merit to Plaintiff's arguments.

After determining that Plaintiff's hepatitis C was a severe impairment, the ALJ found that the extent of Plaintiff's alleged pain symptoms were not fully credible. (T 22) Although Plaintiff testified that he was unable to work due to the nausea, fatigue, and flu-like symptoms caused by his hepatitis C (T 581), Plaintiff's November 2004 ultrasound showed a normal liver (T 205, 214) and a physical examination of Plaintiff's abdomen in December 2004 was normal with no masses or organomegaly. (T 152) Plaintiff started Interferon treatments for hepatitis C in February 2005; he discontinued these treatments in August 2005 due to skin lesions. (T 418, 431, 436) In June 2005, Plaintiff's liver ultrasound was unremarkable. (T 418) The ALJ held that "[l]aboratory testing following the treatment showed claimant's hepatitis viral load was undetectable, indicating the claimant's hepatitis C was cured in spite of the shortened treatment." (T 22) Indeed, in August 2005 and February 2006, Plaintiff's laboratory tests showed his hepatitis viral load to be undetectable. (T 385-86, 431, 436) In addition, a physical examination by Kirk J. Mauro, M.D. ("Dr. Mauro") in November 2007 showed no hepatomegaly or splenomegaly. (T 565-66) Thus, after Plaintiff's abbreviated Interferon treatments in 2005, the clinical findings and physical examinations related to Plaintiff's hepatitis C were normal and unremarkable.

Plaintiff asserts that the ALJ's credibility determination was in error because no physician

opined that Plaintiff was "cured" of hepatitis C and "[i]t is well established that there is no cure for hepatitis C" (Dkt. 17 at 9). On February 21, 2006, Michael McNulty ("McNulty"), a physician's assistant with the Gastroenterology Department at the VA Medical Center, noted that, Plaintiff had completed only 25 weeks of Interferon treatment. (T 431) McNulty concluded that Plaintiff's viral load was undetectable, "making him a sustained responder to treatment" and Plaintiff was "considered cured of his hepatitis c." (Id.) A physician's assistant's opinion is an "other source" acceptable for consideration as part of the complete medical record. See 20 C.F.R. §§ 416.913(d)(1). Accordingly, the ALJ properly considered McNulty's opinion because it was consistent with the other medical evidence that Plaintiff's hepatitis C responded favorably to treatment. Thus, although Plaintiff was diagnosed with chronic hepatitis C, the objective medical evidence does not support his testimony concerning the intensity of pain and fatigue allegedly caused by his hepatitis C.

Plaintiff also alleges that the ALJ improperly assessed Plaintiff's credibility because of Plaintiff's unwillingness to ambulate without a cane (Dkt. 17 at 4). The ALJ noted that Plaintiff refused to walk without a cane despite the fact that he was using the cane improperly. (T 22) During a November 2007 medical examination, Dr. Mauro wrote that Plaintiff's "use of a straight cane appears to be medically necessary at this time, however, this opinion is limited as Mr. Patterson would not attempt to ambulate without his straight cane." (T 566) Dr. Mauro indicated that Plaintiff used a straight cane in his left hand for left leg complaints during ambulation. (Id.) Although Plaintiff was instructed in proper use of the cane, including using it in his right hand to compensate for difficulties with his left leg, Plaintiff refused to try it. (Id.) An ALJ may properly infer from a claimant's improper use of a cane that claimant's need for a cane is not credible. See Walton v.

6

Sec'y of Health & Human Servs., No. 88-1787, 1989 WL 43915, at * 4 n.2 (6th Cir. May 3, 1989) (permissible for ALJ to infer that claimant's need for a cane is not credible because he used an umbrella instead of a cane and held the umbrella in the wrong hand). Thus, in assessing Plaintiff's credibility, the ALJ properly considered Plaintiff's refusal to ambulate without a cane and Plaintiff's improper use of the cane.

Plaintiff contends that the ALJ improperly considered Plaintiff's daily activities in discounting Plaintiff's credibility. At the July 2007 hearing, Plaintiff testified that he performed no activities around the house. (T 590) Plaintiff stated that he did not clean or cook, do the laundry, or go shopping; he testified that his parents or his brother's girl friend do "everything." (Id.) Nonetheless, during a medical examination in December 2004, Plaintiff admitted that he could do daily activities such as cooking, cleaning, shopping, and some yard work. (T 151) Similarly, in November, 2007, Plaintiff advised Dr. Mauro that he bathed and dressed himself, managed his own finances, and performed light household chores, including cooking a small meal and washing dishes. (T 565) Plaintiff also told Dr. Mauro that he is able to drive, read, and write. (Id.) An ALJ may properly rely on inconsistencies in claimant's descriptions of daily activities in assessing credibility. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).

For the foregoing reasons, there was no error in the ALJ's consideration of Plaintiff's pain testimony and substantial evidence supports the ALJ's credibility determination. See generally Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989). Accordingly, remand on this issue is not warranted.

**B.** Plaintiff claims that the ALJ ignored or improperly weighed the opinions of treating and examining physicians (Dkt. 17 at 6-8). Further, Plaintiff argues that the ALJ erred by giving more

weight to the opinions of non-examining physicians (Id.).

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). The opinions of non-examining, reviewing physicians standing alone do not constitute substantial evidence, and are entitled to little weight when contrary to those of the examining physicians. Sharfarz, 825 F.2d at 280-81.

The ALJ may discount a treating physician's opinion if it is not well-supported by medical evidence or is inconsistent with the record as a whole. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004) (ALJ may discount a treating physician's opinion when that opinion is unsupported by the medical evidence). Further, the weight afforded a physician's conclusory statements regarding a claimant depends upon the extent to which the statements are supported by clinical or laboratory findings and are consistent with other evidence of record. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ may reject an opinion that is so brief and conclusory that it lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings. Hudson v. Heckler, 755 F.2d 781, 784 (11th Cir. 1985).

In his decision, the ALJ noted that a physician from the VA Medical Center concluded that Plaintiff required a cane to ambulate and could not sit or stand for "long periods of time," that being greater than fifteen minutes. (T 23–24) As support for her opinion, Donna M. Goldman, M.D. ("Dr. Goldman") completed an undated short form entitled "Medical Statement for Consideration of Aid & Attendance." (T 345-46) In answering the question, "Is the claimant able to walk unaided?," Dr.

Goldman simply responded "No." (T 345) Under the explanation section, Dr. Goldman merely states, "a cane." (Id.) There are no clinical or laboratory findings to support the physician's conclusory statement that Plaintiff required the use of a cane to walk. Likewise, Dr. Goldman cited no medical support for the conclusion that Plaintiff is unable to sit or stand for more than fifteen minutes. (Id.) As such, the ALJ had no obligation to defer to Dr. Goldman's opinion because the findings were wholly conclusory.

In discounting Dr. Goldman's opinion, the ALJ stated that Plaintiff's physical examinations showed only tenderness and some decreased range of motion over the lumbar spine. (T 24) Indeed, a physical examination in November 2004 was normal except for positive straight leg raising on the right. (T 172) Plaintiff denied any weakness or numbness. (Id.) An examination in December 2004 by Morris Kutner, M.D. ("Dr. Kutner"), a consulting physician, revealed a full range of motion in both the cervical and lumbar regions of the spine and no paraverterbral muscle spasms. (T 151-52) In addition, Dr. Kutner observed that Plaintiff had a normal gait, he could walk heel to toe, and he had no difficulty getting up from a chair or getting on or off the examination table. (T 152) According to Dr. Kutner, Plaintiff's range of motion of his cervical spine, shoulders, elbows, hands, hips, knees, ankles, and toes were within normal limits and without any limitations. (Id.) Although Plaintiff complained of back pain, Dr. Kutner concluded that "the physical exam did not support any evidence of back pain, with the exception of some degenerative disease at the 5th level." (Id.) Due to his degenerative disc disease, Dr. Kutner recommended that Plaintiff should not have a physically strenuous job which requires bending, stooping, or lifting more than thirty pounds on a frequent basis. (Id.)

In early April 2005, Plaintiff received physical therapy for lower back pain. (T 518-21)

Plaintiff's examination showed decreased lumbar lordosis and a decreased range of motion, however, Plaintiff's strength was full, his sensation was intact, and his gait was normal. (Id.) Furthermore, Plaintiff's treatment plan in April 2005 was limited to home exercises, body mechanics training, and posture education. (T 520) In May 2005, Plaintiff responded well to the TENS unit and he continued with home exercises for his back pain. (T 403) Thus, The ALJ gave little weight to Dr. Goldman's undated opinion because it was inconsistent with the objective medical evidence.

Next, Plaintiff maintains that the ALJ failed to accord substantial weight to the opinion of Dr. Mauro, a consulting physician. However, the ALJ appropriately discounted Dr. Mauro's opinion regarding Plaintiff's need for a cane and his limited ability to stand and walk. In November 2007, Dr. Mauro stated that Plaintiff's "use of a cane appears to be medically necessary at this time." (T 566) Nevertheless, Dr. Mauro's opinion that Plaintiff needed a cane was "limited" because Plaintiff "would not attempt to ambulate without his straight cane." (Id.) In filling out an activity statement for Plaintiff, Dr. Mauro indicated that Plaintiff could stand for two to three hours in a work day and walk one to two hours in a work day. (T 569) Despite these findings, Dr. Mauro noted that Plaintiff performed straight leg raising to 80 degrees bilaterally and could stand on his heels and toes and squat. (T 566) Dr. Mauro's 2007 examination also revealed that Plaintiff had tenderness in the lumbar region but no palpable paraspinal spasm and no joint deformities. (Id.) Based on his examination of Plaintiff, Dr. Mauro determined that Plaintiff was "capable of gainful employment at some level" and that Plaintiff "most likely would require a sedentary to light duty position, which would allow for frequent position changes." (Id.) Dr. Mauro ultimately concluded that Plaintiff was ambulatory and had full use of his legs. (Id.) Accordingly, the ALJ properly discounted Dr. Mauro's opinion because it was inconsistent with his own findings.

Finally, Plaintiff contends that ALJ erred by giving significant weight to the opinions of the state non-examining physicians who determined that Plaintiff could perform a wide range of light work. However, the ALJ properly relied on the opinions of the state medical consultants because these opinions were consistent with the opinions of Plaintiff's treating and consulting physicians and supported by the record evidence as a whole. (T 153-60, 323-30) For example, Dr. Kutner, who examined Plaintiff in December 2004, determined that Plaintiff should not have a physically strenuous job that required stooping, bending, or lifting more than 30 pounds. (T 152) Similarly, Dr. Mauro concluded that Plaintiff was capable of performing sedentary to light work. (T 566) In addition, Plaintiff's MRI scans and physical examinations indicated degenerative disc disease but only limited tenderness in his back and a restricted range of motion over the lumbar spine. (T 172, 206, 217, 565-73)

**C.** Plaintiff claims that the ALJ erred in substituting his own opinion for those of medical experts (Dkt. 17 at 8-10).

An ALJ may not substitute his own opinion as to the claimant's condition for that of medical experts. Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986). In this case, the ALJ properly considered various medical opinions, including the opinions of Plaintiff's treating and consulting physicians, as well as medical test and examination results. As discussed above, the ALJ appropriately discounted the opinions of Drs. Goldman and Mauro because these opinions were inconsistent with the record evidence or with the physician's own findings. The ALJ did not substitute his own opinion for medical experts simply because he chose to afford more weight to certain medical opinions than to others.

**D.** Plaintiff submits that the ALJ failed to consider the combined effect of all of Plaintiff's

impairments and symptoms, resulting in a deficient RFC determination (Dkt. 17 at 11-12).

The ALJ must consider each alleged impairment and "state the weight accorded [to] each item of impairment evidence and the reasons for his decisions on such evidence." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In addition, the ALJ must explain whether the impairments are severe singly and in combination. Id. The combined effect of impairments must be considered even if any of the impairments considered separately are not "severe." Hudson, 755 F.2d at 785-86. The failure to comply with these requirements results in a remand. Gibson, 779 F.2d at 623.

The ALJ's decision reflects that he considered all of the impairments raised by Plaintiff that are supported by medical evidence in the record. The ALJ found that Plaintiff does not "have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (T 20) Further, the ALJ considered all of Plaintiff's impairments and symptoms in determining that Plaintiff could perform a wide range of light work. (T 20-21) This language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. See Wheeler, 784 F.2d at 1076 (the ALJ's finding that a claimant is "not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity" is sufficient to signify that combined effect of impairments was properly considered). Accordingly, Plaintiff's argument that the ALJ failed to consider his impairments in combination is without merit.

### III. Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for benefits should therefore be affirmed. Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED** and this case dismissed, with each party to bear its own costs and expenses;

(2) the Clerk of the Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).


**Dated:** June 30, 2009

ELIZABETH A JENKINS
United States Magistrate Judge


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. 636(b)(1).